IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID DREWS, : | |
| : | |
| Plaintiff, : | No.  2:23-cv-1934 |
| : | |
| v. : | |
| : | **JURY TRIAL DEMANDED** |
| CHRIS CICCHITTO, : | |
| : | |
| Defendant. : | |

## COMPLAINT

Plaintiff David Drews, by his counsel, hereby files this Complaint as follows:

### INTRODUCTION

1.  On December 16, 2022, Defendant Chris Cicchitto ("Cicchitto") punched Mr. Drews at least three times in the face with a closed fist because he was being recorded during a transport for a hold on an involuntary mental health commitment and was called a "dork." Instead of being accountable and honest for his unjustified and excessive use of force, Cicchitto lied under oath in at least the affidavit of probable cause used to arrest and criminally charge Mr. Drews for recording him, and in his testimony during the preliminary hearing in the criminal proceedings. Cicchitto also lied to medical doctors and caused Mr. Drews to be involuntarily committed and removed from a life-saving liver transplant list. All the criminal charges were subsequently dismissed against Mr. Drews. Cicchitto's conduct violated several constitutional rights and state laws as set forth more fully below.

### PARTIES

2.  Mr. Drews is an adult individual residing in Pennsylvania.

3. Cicchitto is an adult individual who was employed by the University of Pittsburgh Medical Center ("UPMC") as a police officer. At all relevant times, Cicchitto performed traditional police functions as a police officer for UPMC and was authorized to carry out traditional police functions like arrest and uses of force. UPMC maintains its principal place of business at 200 Lothrop Street, Pittsburgh, Pennsylvania 15223. At all relevant times, Cicchitto acted under color of state law, in the scope of his employment and per the policies, practices and customs of the UPMC. Cicchitto is sued in his individual capacity.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because each claim arose in the Western District of Pennsylvania.

## FACTS

6. On December 16, 2022, Mr. Drews was visiting UPMC Presbyterian for medical clearance for an impending liver transplant because of various life-threatening medical conditions from which he was suffering, like liver disease, cirrhosis, and cancer.

7. Mr. Drews is also diagnosed with bipolar disorder.

8. At all relevant times, Mr. Drews was suffering from seizure-like symptoms.

9. While at UPMC Presbyterian, Mr. Drews was placed on a hold for a possible involuntarily commitment to Western Psychiatric Institute and Clinic ("WPIC") for mental

health concerns involving psychosis and an altered mental state stemming from his life-threatening medical conditions.

10. Cicchitto, along with three UPMC security officers, were assigned to help transport Mr. Drews to WPIC during the hold.

11. No medical representative from UPMC was present.

12. At all relevant times, Cicchitto knew that Mr. Drews was vulnerable and being prepared for a potentially life-saving operation for end stage liver disease and hepatocellular cancer and was suffering from psychosis because of his medical conditions.

13. At all relevant times, Cicchitto knew that medical orders for Mr. Drews required de-escalation techniques to address his acute psychosis and life-threatening medical conditions.

14. Prior to this incident, Mr. Drews was attending UPMC Montefiore since around June 2018, without issue or incident.

15. Mr. Drews began recording Cicchitto and others during the transport to WPIC.

16. At no time did Cicchitto or anyone else tell Mr. Drews that he was not permitted to record them performing their official police duties, nor did Cicchitto or anyone else have any expectation of privacy during the transport.

17. The video recording of the transport shows at least the following:

    a. During transport, Mr. Drews calls Cicchitto "dorky," causing him to get upset,

    b. In response to being called "dorky," Cicchitto punches Mr. Drews' phone out of his hands, knocking it to the ground,

    c. After Mr. Drews picks up his phone, he continues to record,

    d. Cicchitto again tries to punch the phone out of Mr. Drews' hands,

    e. Cicchitto says nothing about it being unlawful to record,

  f.  Cicchitto threatens to punch the phone a third time after being called a "virgin,"

  g.  Cicchitto begins making fun of Mr. Drews' seizure-like condition, stating "What are you scared about? Your hands are shaking." and

  h.  When the elevator door opens, Mr. Drews is still lying in his transport hospital bed recording,

  i.  Cicchitto pulls the bed toward him and punches Mr. Drews in the face with a closed fist and no warning, and

  j.  Cicchitto takes Mr. Drews' phone and punches him several more times in the face with a closed fist.

18. Cicchitto admits to punching Mr. Drews in the face at least four times.

19. Cicchitto punched Mr. Drews in the face because, among other reasons, he was called a "dork," and it was being recorded.

20. Cicchitto then lied to medical doctors about the incident and told them that he was attacked by Mr. Drews, which caused the hold on Mr. Drews to be completed and thus be involuntarily committed to WPIC.

21. Because of this incident, Mr. Drews was removed from the liver transplant list.

22. Mr. Drews suffered seizure-like activity after being punched by Cicchitto, causing him to fall out his chair while shaking and screaming only a few hours later.

23. During the preliminary hearing, Cicchitto falsely testified in at least the following ways:

  a.  Falsely testifying that Mr. Drews had the phone "close to [Cicchitto's] face," causing him to "reach" for the phone,

  b.  Falsely testifying that he "grabbed" the phone from Mr. Drews upon exiting the elevator instead of punching him in the face,

  c.  Falsely testifying that Mr. Drews grabbed him by the vest, pulling him into the hospital bed,

       d.      Falsely testifying that Mr. Drews reached for or grabbed his taser,

       e.      Falsely testifying that Mr. Drews struck him in the face, and

       f.      Falsely testifying that Mr. Drews reached for his taser twice.

24. Cicchitto admits that he attacked Mr. Drew because he was videoing the transport.

25. On the same day, December 16, 2022, Cicchitto filed a Criminal Complaint and Affidavit of Probable Cause against Mr. Drews, asserting criminal offenses for aggravated assault (first degree felony), disarming law enforcement officer (third degree felony), resisting arrest (second degree misdemeanor), harassment (third degree misdemeanor), and disorderly conduct (third degree misdemeanor).

26. The affidavit of probable cause includes at least the following material falsehoods:

       a.      Falsely claiming that Mr. Drews was not allowed to film UPMC police officers,

       b.      Falsely claiming that Cicchitto tried to "grab" the phone from Mr. Drews after he punched/smacked it intentionally from Mr. Drews' hand,

       c.      Falsely claiming that Cicchitto tried to "grab" the phone from Mr. Drews the second time when he punched Mr. Drews directly in the face with a closed fist,

       d.      Falsely claiming that Mr. Drews grabbed Cicchitto before Cicchitto punched him in the face,

       e.      Falsely claiming that Mr. Drews grabbed Cicchitto by the vest,

       f.      Falsely claiming that Mr. Drews pulled Cicchitto at all,

       g.      Falsely claiming that Mr. Drews grabbed for Cicchitto's taser,

       h.      Falsely claiming that Mr. Drews struck Cicchitto, and

       i.      Falsely claiming that Cicchitto struck Mr. Drews so that Mr. Drews would "let go of the taser."

27. On March 15, 2023, the criminal offenses for aggravated assault and harassment were dismissed by the magistrate judge at the preliminary hearing.

28. The remaining criminal offenses were dismissed by the trial judge before trial.

## Count I

### Excessive Force Pursuant to 42 U.S.C. § 1983

29. All paragraphs herein are incorporated by reference.

30. As a direct and proximate result of the conduct described herein, Cicchitto violated Mr. Drews' right to be free from the use of excessive force against him under the Fourth Amendment of the United States Constitution by effectuating an unlawful arrest through the use of unjustified and excessive force.

## Count II

### First Amendment Retaliation

31. All paragraphs herein are incorporated by reference.

32. As a direct result of the conduct described herein, Cicchitto violated Mr. Drews' right to record police activity during a medical transport when he arrested Mr. Drews and used excessive force against him in retaliation for recording such activity.

## Count III

### Malicious Prosecution Pursuant to 42 U.S.C. § 1983

33. All paragraphs herein are incorporated by reference.

34. As direct and proximate result of the conduct described herein, Cicchitto initiated criminal proceedings against Mr. Drews without probable cause and with malice, and said criminal proceedings were favorably terminated on behalf of Mr. Drews.

### Count IV

### False Arrest Pursuant to 42 U.S.C. § 1983

35. All paragraphs herein are incorporated by reference.

36. As a direct and proximate result of the conduct described herein, Cicchitto violated Mr. Drews' right to be free from false arrest under the Fourth Amendment of the United States Constitution by seizing and detaining him without probable cause.

### Count V

### Common Law Assault

37. All paragraphs herein are incorporated by reference.

38. Cicchitto assaulted Mr. Drews intending to cause harmful and offensive contact with him, or an imminent apprehension of such contact, and thus put Mr. Drews in such imminent apprehension.

### Count VI

### Common Law Battery

39. All paragraphs herein are incorporated by reference.

40. Cicchitto directly or indirectly intended to cause harmful and offensive contact with Mr. Drews, or an imminent apprehension of such contact, and did harmfully and offensively contact him.

### Count VII

### Common Law Malicious Prosecution

41. All paragraphs herein are incorporated by reference.

42.     As direct and proximate result of the conduct described herein, Cicchitto initiated criminal proceedings against Mr. Drews without probable cause and with malice, and said criminal proceedings were favorably terminated on behalf of Mr. Drews

**Prayer for Relief**

WHEREFORE, Mr. Drews respectfully requests that judgment be entered in his favor and against Cicchitto:

(i)     Actual damages,

(ii)    Compensatory damages,

(iii)   Punitive damages,

(iv)    Attorney's fees, witness fees and costs in Counts I-IV, and

(v)     All other relief as this Court deems just and proper.


Respectfully submitted,

O'BRIEN COLEMAN & WRIGHT, LLC

/s/ Alec B. Wright
Alec B. Wright
Pa. ID No. 316657

116 Boulevard of the Allies
Pittsburgh, Pennsylvania 15222
alec@ocwjustice.com
(412) 232-4400 - phone

*Counsel for Plaintiff*